IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HENRY SCIORTINO,

        Plaintiff,

v.

JARDEN, INC. a/k/a NEWELL BRANDS
a/k/a PURE FISHING, INC.,

        Defendant.

CIVIL ACTION
NO. 17-0605

## OPINION

**Slomsky, J.**                                                                                                         July 23, 2019

### I. INTRODUCTION

This case arises from a products liability action originally filed in the Court of Common Pleas of Chester County by Plaintiff Henry Sciortino ("Plaintiff" or "Sciortino") against Defendant Pure Fishing, Inc. ("Defendant" or "Pure Fishing"). Sciortino sued Pure Fishing because it allegedly manufactured and sold a defective pair of Wader boots that caused him injury after a fall. Wader boots are waterproof shoes often used for hunting and other outdoor activities.

Before the Court is Defendant's Motion to Dismiss (Doc. No. 81), Plaintiff's Response in Opposition (Doc. No. 82), and Defendant's Reply (Doc. No. 83). The parties dispute whether Pennsylvania courts can exercise personal jurisdiction over Pure Fishing. The company was incorporated in Iowa and maintains a principal place of business in South Carolina. It has an office in Philadelphia, is registered to do business in the Commonwealth of Pennsylvania, and has received tax credits from Pennsylvania for work in research and development.

Defendant contends that a Pennsylvania court cannot exercise personal jurisdiction over it because this would violate the Due Process Clause of the Fourteenth Amendment. In <u>Daimler AG v. Bauman</u>, 571 U.S. 117 (2014), the United States Supreme Court held that under the Due Process Clause, a court can only exercise personal jurisdiction over a company if it is "at home" in the state. Defendant claims that the facts show it is not "at home" in Pennsylvania. Plaintiff argues to the contrary that regardless of Defendant's contact with Pennsylvania, it has consented to personal jurisdiction by registering to do business in this state.

For reasons that follow, the Court is persuaded that it is proper to exercise personal jurisdiction over Pure Fishing based on its consent by registering to do business in Pennsylvania. Consequently, the Motion to Dismiss (Doc. No. 81) will be denied.

## II. FACTUAL BACKGROUND

### A. Jurisdiction

Henry Sciortino is a Pennsylvania resident. (Doc. No. 80 ¶ 2.) Pure Fishing is a company that designs, manufacturers and sells Wader boots. (<u>Id.</u> ¶ 28.) In the United States, Pure Fishing conducts business in the following four cities: Columbia, South Carolina, Sprite Lake, Iowa, Kansas City, Missouri, and Philadelphia, Pennsylvania. (Doc. No. 81-1 ¶ 23.) Its principal place of business is Columbia, South Carolina. (Doc. No. 81-1 ¶ 8.) The company is incorporated in the state of Iowa. (<u>Id.</u> ¶ 9.) About forty-eight Pure Fishing employees work at its Philadelphia facility, which is located at 3028 W. Hunting Park Avenue, Philadelphia, Pennsylvania, 19132-1121. (Doc. No. 80 ¶ 6; Doc. No. 81-1 ¶ 13.)[1] At this location, Pure Fishing manufactures and

---

[1] On April 6, 2007, Pure Fishing was acquired by Jarden Corporation as a wholly-owned subsidiary. (Doc. No. 81-1 ¶ 6.) On April 15, 2016, Newell Brands Inc. ("Newell Brands") purchased Jarden Corporation's stock, and Pure Fishing became a wholly-owned subsidiary of Newell Brands. (<u>Id.</u> ¶ 4.) Newell Brands also owns a company named PENN Fishing Tackle

repairs fishing reels sold under PENN's brand, through a license agreement it has with PENN. (Doc. No. 80 ¶ 14; Doc. No. 81-1 ¶ 20.)

On January 5, 2009, Pure Fishing filed an Application for a Certificate of Authority with the Corporation Bureau of the Pennsylvania Department of State, which authorized it to conduct business in Pennsylvania as a foreign corporation. (Doc. No. 80 ¶ 14; Doc. No. 80 at 30-31; Doc. No. 82 at 16-17.) On March 28, 2016, it filed a Statement of Merger, which gave notice that it acquired a company named Hardy North America, Ltd., also a Pennsylvania corporation. (Doc. No. 80 ¶ 10; Doc. No. 80 at 32-35.) Both of these documents list an entity named "C.T. Corporation System" as Pure Fishing's Commercial Registered Office Provider[2] for acceptance of service in Philadelphia County. (See Doc. No. 80 at 31, 33.)

Beginning in 2009, Pure Fishing submitted applications to receive tax credits from the Commonwealth of Pennsylvania for participation in a research and development tax program. (Id. ¶ 22.) In each application for these credits, Pure Fishing identified itself as a corporate citizen of the Commonwealth of Pennsylvania to qualify for tax credits. (Id. ¶ 21; see also 061 Pa. Code § 9.17.) Pursuant to a subpoena issued during jurisdictional discovery in this case, the Pennsylvania

---

Mtg. Co. ("PENN"). (Id. ¶ 5.) Pure Fishing rents the Philadelphia facility from PENN. (Id. ¶¶ 11-12.)

[2] Under Pennsylvania law, 15 P.S. § 109, entities are required to list a registered office address on any document filed with the Department of State. They may enter into a contract for the services of a Commercial Registered Office Provider and submit the provider's name in lieu of a registered office address. This option is available for any corporation or association that does not have a physical location or mailing address in the Commonwealth of Pennsylvania. Commercial Registered Office Providers, DOS, https://www.dos.pa.gov/BusinessCharities/Business/Resources/Pages/Commercial-Registered-Office-Providers.aspx (last visited: Apr. 30, 2019).

Department of Revenue sent Plaintiff copies of the three most recently filed applications.[3] (Doc. No. 80 ¶ 23.) They show that from 2014 to 2016, Pure Fishing received these tax credits from the Pennsylvania Department of State. (Doc. No. 80 ¶ 20; Doc. No. 81 at 12.) Specifically, Pure Fishing received $5,872 for work it did in the area of Research and Development in the Commonwealth of Pennsylvania in 2014; $1,530 in 2015; and $8,711 in 2016. (Doc. No. 80 ¶¶ 24-26.)

### B. History of the Wader Boots and Sciortino's Injury

In the 1850's Pure Fishing's predecessor, a company named Hodgman, introduced Wader boots into the marketplace. (Id. ¶ 27.) Presently, Pure Fishing owns the Hodgman brand. (Id. ¶ 7.) Pure Fishing designed, manufactured and sold the particular model involved in this dispute, known as Chest Waders, which Plaintiff purchased on January 22, 2004.[4] (Id. ¶ 28; Doc. No. 81-1 ¶ 20.) With few exceptions, he wore the boots only twice a year from 2004 to 2015. They were worn during hunting seasons. (Doc. No. 80 ¶¶ 37, 38.)

On January 6, 2015, Sciortino went on a hunting trip to Middle Creek Wildlife Management Area in Kleinfeltersville, Pennsylvania. (Id. ¶ 40.) That day, it snowed and the weather conditions were cold, rainy and windy. (Id. ¶ 41.) At approximately 5:30 a.m., Sciortino began walking through mud, water, slush and underbrush. (Id. ¶ 44.) After walking about fifty feet, he fell to the ground and hit his leg and head on rocks. (Id. ¶ 45.) He then lost consciousness

---

[3] Although Plaintiff has alleged that he was provided with Defendant's three most recent applications for tax credits, he has not attached them to the Complaint or included them in the record. Pure Fishing concedes that it received $16,113 in tax credits from the Commonwealth of Pennsylvania. (Doc. No. 81 at 12.)

[4] In its Philadelphia facility, Pure Fishing does not design, manufacture, service or repair Hodgman products, including Waders. (Doc. No. 81-1 ¶¶ 22, 23.) The Philadelphia facility is used exclusively for the storage of raw materials, inventory, repair and servicing of brand fishing reels. (Id. ¶ 28.)

for some time.  (Id. ¶ 46.)  When he attempted to get up, his foot twisted, and he fell again.  (Id.) This happened at least two more times.  (Id. ¶ 47.)  After the repeated falls, Sciortino found that the sole of his Wader boots had come completely detached.  (Id. ¶ 48.)  He also found that the lower soles of the boots were detached from their rubber upper-waterproof base.  (Id. ¶ 60.)  The midsole, which serves as an intermediate and integral component of the sole construction was made of polymeric material.  (Id.)  Sciortino alleges that all of these factors contributed to his injuries.

As a result of his fall, Sciortino sustained many injuries and underwent surgery.  (Id. ¶¶ 67, 69-70.)  Since the incident, he has reached maximum recovery but has not been able to achieve full mobility, maneuverability or to eliminate the pain.  (Id. ¶ 74.)

### C.  Procedural History

Sciortino originally filed this lawsuit in the Court of Common Pleas of Chester County Pennsylvania.  (Doc. No. 1 at 6.)  On February 8, 2017, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1332,[5] the diversity of citizenship jurisdiction statute.  (Doc. No. 1.)

On March 3, 2017, Plaintiff filed an Amended Complaint.  (Doc. No. 11.)  He then filed a Second Amended Complaint on March 23, 2017.  (Doc. No. 15.)  Pure Fishing moved to dismiss Plaintiff's Second Amended Complaint arguing that the Court lacks jurisdiction over it.  (Doc. No. 20.)  On July 7, 2017, the Court a hearing on the Motion, and at the hearing, authorized the parties to conduct jurisdictional discovery.  (Doc. No. 41.)

---

[5]  28 U.S.C. § 1332 provides, in relevant part, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."

On October 11, 2017, Plaintiff filed a Third Amended Complaint. (Doc. Nos. 42, 44.) Pure Fishing moved to dismiss the Third Amended Complaint, again arguing that the Court lacks jurisdiction over it. (Doc. No. 46.) On January 17, 2018, the Court held another hearing on Pure Fishing's Motion to Dismiss. (Doc. No. 51.) In light of the arguments made by counsel, the Court authorized the parties to engage in further jurisdictional discovery and afforded them the opportunity to file supplemental memoranda addressing their findings. (Doc. No. 52.) On August 15, 2018, the parties completed jurisdictional discovery and Pure Fishing filed a supplemental memorandum in support of its Motion to Dismiss. (Doc. No. 63.) Plaintiff did not file a supplemental memorandum on that date.

Instead, on September 12, 2018, Plaintiff filed another document titled "Third Amended Complaint."[6] Because a Third Amended Complaint had already been filed, the Court scheduled a telephone conference to address to discrepancy. (Doc. No. 68.) During the conference, the Court indicated that it would permit additional discovery on the issue of whether Pure Fishing is registered to do business in the Commonwealth of Pennsylvania, and also granted leave for Plaintiff to file a Fourth Amended Complaint. (Doc. No. 73.) Plaintiff filed the Fourth Amended Complaint on November 26, 2018. (Doc. No. 80.) Jurisdictional discovery is now closed.

---

[6] Plaintiff was authorized to file a Third Amended Complaint under an Order entered on July 10, 2017. (Doc. No. 42.) Plaintiff filed his Third Amended Complaint on October 11, 2017. (Doc. No. 44.) The document filed on September 12, 2018, filed without leave of Court, is actually a fourth Amended Complaint, even though Plaintiff titled it "Third Amended Complaint." (Doc. No. 66.) Plaintiff has not explained why he filed two documents titled "Third Amended Complaint." As discussed supra, the Court later granted leave to file a Fourth Amended Complaint, which is the operative Complaint in this case.

Before the Court is Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint. (Doc. No. 81.) Plaintiff filed a Response in Opposition (Doc. No. 82), and Defendant filed a Reply (Doc. No. 83). For the following reasons, Defendant's Motion to Dismiss will be denied.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant. "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (internal citation omitted). To show personal jurisdiction, the plaintiff may rely on the allegations in the complaint, affidavits, or other evidence. Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009). "Where the court chooses not to conduct an evidentiary hearing, the plaintiff need only demonstrate a prima facie case of jurisdiction to defeat a motion to dismiss." Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citations omitted). In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Id.

### IV. ANALYSIS

Personal jurisdiction refers to the court's power over parties to a lawsuit. Because a state court's assertion of jurisdiction exposes defendants to the state's coercive power, a challenge to personal jurisdiction is subject to review for compatibility with the Fourteenth Amendment's Due Process Clause.[7] International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Goodyear

---

[7] The Due Process Clause of the Fourteenth Amendment provides, in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person

7

Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011); Daimler AG v. Bauman, 571 U.S. 117 (2014).

"A federal district court may assert personal jurisdiction over a nonresident of a state in which the court sits to the extent authorized by the law of that state." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987). This Court sits in Pennsylvania, which permits jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b); see also D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009).

### A. Personal Jurisdiction: General and Specific

There are two types of personal jurisdiction: general and specific. Where general jurisdiction over a nonresident of a state exists, a court may hear any claim over a defendant, as long as the defendant's affiliations with the state are so "constant and pervasive" as to render [it] "essentially at home in the forum state." Daimler, 571 U.S. at 122 (quoting Goodyear, 564 U.S. at 915). It follows that if a court has general personal jurisdiction over a defendant, it can hear claims against it regardless of whether the claim arises from its contacts with the forum state. Id.

On the other hand, specific jurisdiction exists if the defendant has "purposefully directed" its activities at residents of the forum state, and the litigation results from alleged injuries that "arise out of or relate to" those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-74 (1985). To determine whether there is specific jurisdiction, the Court must engage in a three-part inquiry. First, the Court must evaluate whether the defendant "purposefully established 'minimum

---

of life, liberty, or property, without due process of law . . .

U.S. Const. amend. XIV

contacts' in the forum State." Id. at 472. Second, the court must determine whether the litigation "arise[s] out of or relate[s] to" at least one of those contacts. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Third, if the first two requirements have been met, the court may consider whether exercising personal jurisdiction over the defendant "comport[s] with 'fair play and substantial justice.'" Burger King Corp., 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).

**B. Jurisdiction Based on Consent**

In addition, Pennsylvania courts have established a third alternative to jurisdiction: personal jurisdiction based on consent. Notwithstanding the Supreme Court's holdings on personal jurisdiction, supra, Third Circuit courts have developed this independent path to personal jurisdiction that applies to foreign corporations that register to do business under the Pennsylvania registration statute. This statute, 42 Pa.C.S.A. § 5301(a), notifies registrants of the effect of qualifying as a foreign corporation, as follows:

> The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person . . .
>
>     (2) Corporations --
>
>         (i)    Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
>
>         (ii)   Consent, to the extent authorized by the consent.
>
>         (iii)  The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa.C.S.A. § 5301(a); see Bane v. Netlink, 925 F.2d 637, 639 (3d Cir. 1991) (holding that defendant's application for a certificate of authority can be viewed as its consent to be sued in

9

Pennsylvania under section 5301(a)(2)(ii), which explicitly lists "consent" as a basis for assertion of jurisdiction over corporations); see also Bors v. Johnson & Johnson, 208 F. Supp. 3d 648, 650 (E.D. Pa. 2016). Moreover, under 42 Pa.C.S.A. § 5301(a)(2)(i), by qualifying as a foreign corporation under the laws of Pennsylvania, Pure Fishing agreed that courts in Pennsylvania can exercise general personal jurisdiction over it.

Notably, the United States Supreme Court has not decided whether consent-based jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. Specifically, it is unclear if registration to do business in Pennsylvania is sufficient to render a corporation "at home" in the Commonwealth for the purposes of invoking the Supreme Court's well-established general jurisdiction standard. Daimler, 571 U.S. at 122 (quoting Goodyear, 564 U.S. at 915). Third Circuit courts, however, have clearly articulated that if a foreign corporation registers to do business in the Commonwealth of Pennsylvania, there is personal jurisdiction over the corporation, regardless of whether the personal jurisdiction is general or specific.[8] In the present matter, the Court adopts that reasoning, explained infra, and will exercise personal jurisdiction over Pure Fishing based on its consent, without reaching the issue of whether general or specific jurisdiction otherwise exists.

### 1. This Court Properly Exercises Personal Jurisdiction Over Pure Fishing Based On Consent To Do Business In Pennsylvania.

Despite its registration to do business in Pennsylvania, Pure Fishing contends that the Due Process Clause of the Fourteenth Amendment prohibits this Court from exercising jurisdiction over

---

[8] For example, in Murray v. American LaFrance, the Superior Court of Pennsylvania noted that even though the United States Supreme Court has not discussed consent to jurisdiction based on state business registration laws since it decided Daimler, registering to do business as a foreign corporation constitutes consent to personal jurisdiction. Murray v. LaFrance, 2018 Pa. Super. Ct. 267 (Pa. Super. Ct. 2018) (en banc review granted Dec. 7, 2018, Opinion withdrawn).

it exclusively on that basis. Pointing to the Supreme Court's decision in Daimler AG v. Bauman, it argues that it is not "at home" in the state. It further submits that under Daimler, it can only be considered "at home" in the states where it was incorporated and where it maintains its principal place of business; neither of which, it contends, is Pennsylvania.

First, a discussion of Daimler AG v. Bauman is warranted. In Daimler, the plaintiffs were twenty-two Argentinian residents who filed a complaint in the United States District Court for the Northern District of California against a German company that was located in Germany and conducted operations solely abroad. Daimler, 571 U.S. at 120-121. Simply put, the case involved foreign plaintiffs, a foreign defendant, and causes of action that arose entirely outside of the United States. Id. Plaintiffs attempted to establish jurisdiction in a California court based on the California contacts of Mercedes-Benz USA, LLC, a subsidiary of Daimler, incorporated in Delaware with its principal place of business in New Jersey. Id. at 121. Mercedes-Benz USA, LLC distributed Daimler manufactured vehicles to independent dealerships throughout the United States, including ones located in California. Id.

Given this background, the Supreme Court considered whether the corporate contacts of Mercedes-Benz USA, LLC could be attributed to Daimler for purposes of personal jurisdiction, and whether such corporate activity was sufficient to establish personal jurisdiction over the defendant. Id. at 752. It held that the Due Process Clause of the Fourteenth Amendment precluded a California federal court from exercising jurisdiction because, given the absence of any connection to the parties and the causes of action alleged in the complaint, Daimler was not "at home" in California. Id. at 753.

11

The Court's holding in Daimler was based in part on its earlier holding in Goodyear Dunlop Tires Operations, S.A. v. Brown,[9] where it established the following precept of general personal jurisdiction: a state court may assert jurisdiction over a foreign corporation "to hear any and all claims against [it]" only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive "as to render [it] essentially at home in the forum State." Daimler, 571 U.S. at 122 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). With respect to corporate defendants, the Court offered two paradigms of personal jurisdiction that would meet this test: a corporate defendant could be considered "at home" for jurisdictional purposes where (1) its principal place of business is located and (2) it is incorporated. Id. at 135.

Importantly, the Supreme Court's holding in Daimler did not rule out consent as a basis for establishing personal jurisdiction over a corporation that registers to do business in Pennsylvania. This caveat has essential jurisdictional effects on foreign corporations like Pure Fishing. In Bane

---

[9] Prior to Goodyear, the Court's holding in International Shoe Co. v. Washington defined general personal jurisdiction. 326 U.S. 310 (1945). In that case, a State could exercise personal jurisdiction over an out-of-state defendant if the if the defendant had "certain minimum contacts" with the State such that the maintenance of the suit did not offend "traditional notions of fair play and substantial justice." Id. at 316. This holding gave rise to the two main categories of personal jurisdiction that exist today: (1) general (all-purpose jurisdiction where a corporate defendant can be sued in a state for any reason) and (2) specific (case-based jurisdiction where a lawsuit arises out of or relates to a defendant's contacts with a state.) Daimler, 571 U.S. at 126 (quoting International Shoe Co., 326 U.S. at 316).

International Shoe's broad definition of general personal jurisdiction allowed states to confer all-purpose jurisdiction over a corporate defendant as long as it "engage[d] in a substantial, continuous, and system course of business." Daimler, 571 U.S. at 137-38 (citing International Shoe, 326 U.S. at 318). Goodyear and Daimler narrowed the scope of this holding, instituting the "at home" standard, which limited the set of affiliations with a forum that would render a defendant amenable to all-purpose jurisdiction there.

12

v. Netlink, Inc., the Third Circuit addressed the effect of a defendant's application for and receipt of authorization to do business in Pennsylvania, explaining:

> We need not decide whether authorization to do business in Pennsylvania is a "continuous and systematic" contact with the Commonwealth for purposes of dichotomy between "general" and "specific" jurisdiction because such registration by a foreign corporation carries with it consent to be sued in Pennsylvania courts.
>
> . . .
>
> By registering to do business in Pennsylvania, [Defendant] 'purposefully avail[ed]' itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

925 F.2d 637, 639-640 (3d Cir. 1991). Further, the Court stated:

> [Defendant's] application for a certificate of authority can be viewed as its consent to be sued in Pennsylvania under section 5301(a)(2)(ii), which explicitly lists "consent" as a basis for assertion of jurisdiction over corporations. Consent is a traditional basis for assertion of jurisdiction long upheld as constitutional.

Id.[10]

Although Bane was decided before Daimler, district courts in Pennsylvania have agreed that the Third Circuit's reasoning in Bane remains unchanged. Bors v. Johnson & Johnson, 208 F. Supp. 3d 640, 653 (E.D. Pa. 2016) (denying a motion to dismiss based on personal jurisdiction because consent was established through registration to do business under 42 Pa. C.S.A. § 5301, and noting that "Daimler does not eliminate consent to general personal jurisdiction over a corporation registered to do business in Pennsylvania"); see also Gorton v. Air & Liquid Systems Corporation, 303 F. Supp. 3d 278, 295 (M.D. Pa. 2018).

---

[10] Although Pure Fishing correctly points out that Bane was decided before Daimler, it incorrectly posits that Daimler controls for that reason. For reasons discussed supra, Daimler does not disturb the Third Circuit's ruling in Bane that personal jurisdiction based on consent, a third category of personal jurisdiction recognized by Pennsylvania courts, can be established by registering to do business in Pennsylvania.

13

Defendant argues that this Court should ignore the Third Circuit's holding in Bane because under the Supreme Court's holding in Daimler, asserting personal jurisdiction over it based solely on its registration to do business violates the Due Process Clause of the Fourteenth Amendment. Plaintiff proffers that jurisdiction is proper solely because Defendant has consented to personal jurisdiction by registration, pursuant to 42 Pa.C.S.A. § 5301(a).

Bors v. Johnson & Johnson is instructive here. 208 F. Supp. 3d at 651. There, the district court addressed the exact arguments that Plaintiff and Defendant set forth here. Id. at 352. It held:

> Courts can find personal jurisdiction in three ways: consent to general jurisdiction, general jurisdiction, or specific jurisdiction. Personal jurisdiction may be established through a party's expressed or implied consent. One way a party can consent to jurisdiction is through "state procedures which find constructive consent to the personal jurisdiction of the state court in the voluntary use of certain state procedures." The law of the state determines whether a corporation consents to the personal jurisdiction of the courts.

Id. at 651-52.

Thus, because Pennsylvania's registration statute explicitly advises foreign corporations of the jurisdictional effect of registering to do business in the Commonwealth, and due to the fact that Pure Fishing has undisputedly registered to do business here, it has consented to the jurisdiction of Pennsylvania courts for that reason alone.[11]

---

[11] In Bors, the Court emphasized the importance of the language of Pennsylvania's registration statute. 208 F.Supp.3d at 654. It noted that although the Third Circuit has not addressed whether consent-based jurisdiction comports with the Supreme Court's holding in Daimler, it is proper to exercise such jurisdiction over foreign registrants solely because of the explicit nature of the statute. Id. Other courts, when evaluating consent-based jurisdiction, have pointed to the clarity of Pennsylvania's statute for guidance. Id. (citing Display Works, LLC v. Bartley, 182 F.Supp.3d 166, 174 (D.N.J. 2016) (holding that consent-based jurisdiction does not exist under New Jersey's registration statute because unlike Pennsylvania's, it does contain clear language warning registrants that they are submitting to the general jurisdiction of New Jersey courts.)

## 2. The Temporal Provision of 42 Pa. C.S.A. § 5301

Despite the holding in Bane, Pure Fishing argues that it "is not subject to general personal jurisdiction because it was not registered to do business in Pennsylvania when it sold the [C]hest [W]aders in question," thereby raising a question under the temporal provision of the Pennsylvania registration statute. (Doc. No. 81 at 27.) In another case addressing consent by registration, the Superior Court of Pennsylvania clarified this point as follows:

> The plain language of 42 Pa. C.S.A. § 5301 does not expressly limit jurisdiction to only those events that occur during a foreign association's registration in Pennsylvania. Although section 5301(b) contains a temporal provision allowing for jurisdiction over a foreign association that has withdrawn its registration in Pennsylvania, section 5301(a) does not preclude jurisdiction for acts committed prior to registration.

Webb-Benjamin, LLC v. International Rug Group, LLC, 192 A.3d 1133, 1137 (Pa. Super. Ct. 2018) (internal citations omitted).

Therefore, regardless of when the boots that allegedly caused Plaintiff's injury were purchased, Pure Fishing is subject to the Court's jurisdiction because it is presently registered to do business in Pennsylvania.

For all of these reasons, Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint (Doc. No. 81) will be denied.

**C. Defendant's Motion To Strike Also Will Be Denied.**

Defendant also moves to strike the Fourth Amended Complaint because Plaintiff filed it five days after the Court's deadline. (Doc. No. 81 at 22-24.) In an Order dated October 23, 2018, the Court granted Plaintiff leave to file a Fourth Amended Complaint by Wednesday November 21, 2018. (Doc. No. 73.) Plaintiff filed his Fourth Amended Complaint on November 26, 2018. (Doc. No. 80.) Defendant contends that Plaintiff's filing past the Court's deadline violated Federal Rule of Civil Procedure 15(a)(2), which provides that ". . . a party may amend its pleading only

with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Amendments to a complaint pursuant to Rule 15 are "liberally granted" and "rest within the sound discretion of the trial court." Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir.1983). Rule 15(a) is liberally construed in favor of allowing disputes to be settled on their merits. See United States v. Hougham, 364 U.S. 310, 316 (1960) (citing Conley v. Gibson, 355 U.S. 41, 48 (1957)); Kauffman v. Moss, 420 F.2d 1270, 1276 (3d Cir. 1970). As such, the Court will exercise its broad discretion to liberally interpret Rule 15(a) and deny Defendant's Motion to Strike the Fourth Amended Complaint.

## V. CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss (Doc. No. 81) will be denied. An appropriate Order follows.